S. J. PETERSON v. ERNEST F. LUNDBERG AND OTHERS.[1]

January 8, 1926.

No. 25,028.

**No mechanic's lien on premises for work done under contract with stranger to title.**

1. A contractor is not entitled to a mechanic's lien for work done on a lot without the knowledge of the owner under a contract with a third party who was negotiating for the purchase of the lot but never acquired any interest therein.

**Work under contract between contractor and stranger to title.**

2. Plaintiff performed his work under a contract with one Lundberg who was negotiating for the purchase of the property, but no contract for its purchase was ever consummated and Lundberg never acquired any rights therein.

1. See Mechanics' Liens, 27 Cyc. p. 51.
2. See Mechanics' Liens, 27 Cyc. p. 53.

Action in the district court for Hennepin county to foreclose a mechanic's lien. The case was tried before Montgomery, J., who ordered a money judgment in favor of plaintiff, but adjudged plaintiff not entitled to a lien against the property. Plaintiff appealed from an order denying his motion for a new trial. Affirmed.

*Malmberg & Nelson*, for appellant.

*George M. Bleecker* and *Loren C. Babcock*, for respondent.

[1]Reported in 206 N. W. 641.

TAYLOR, C.

Action to foreclose a mechanic's lien filed against the property of defendant Carlston for work in excavating for the basement of an apartment building, performed by plaintiff under a contract with defendant Lundberg. The trial court made findings of fact and conclusions of law to the effect that plaintiff was entitled to a personal judgment against Lundberg, but was not entitled to a lien upon the property. Plaintiff made a motion for amended findings and, if that were denied in whole or in part, made a further motion for a new trial. The court made an order denying the motion for amended findings except in one unimportant item, and made a further order denying the motion for a new trial. Plaintiff appealed from both orders, but, as the order denying the motion for amended findings is not appealable, that appeal is dismissed.

Defendant Carlston owned the real estate in question, being the front 100 feet of lots 6 and 7 of block 19 in Harmon's Addition to Minneapolis. It was vacant and unoccupied. In the fall of 1922 Carlston went to California. He and Lundberg had had some talk in reference to a purchase of the property by Lundberg. In December, 1922, John E. Anderson, a friend of Carlston, purporting to act as his agent but without any authority to do so, entered into an earnest money contract with Lundberg for the sale of the property to Lundberg for the sum of $40,000, of which $100 was paid to Anderson as earnest money, $9,900 was to be paid on delivery of a warranty deed, and $30,000 was to be secured by a mortgage on the property, payable on or before October 10, 1923. The contract provided that, in case Lundberg erected a specified apartment building on the property, Carlston would release his first mortgage and take a second mortgage in lieu thereof payable in monthly instalments ending on October 10, 1929. It also provided that, if Lundberg failed to perform on his part within 40 days from its date, the $100 earnest money should be forfeited as liquidated damages. The contract was signed by Anderson as "agent for the owner and seller" and by Lundberg, but expressly provided that it was made subject to the approval of Carlston. Anderson mailed the contract to Carlston in California. Carlston signed it on January 3, 1923, and mailed it back to Anderson with the following letter:

"Pasadena, Calif., Jan. 2, '23.

"Mr. John Anderson,

"Minneapolis, Minn.

"Dear John:

"Just received your letter and the papers this morning and I am glad you explained how you come to write about Lundberg getting the corner. It seemed strange to me about 10 days before I had your wire I had a telegram from Lundberg stating he would take the corner at forty-two (42,000) thousand and his contractor was ready to go right to work, but he wanted me to wait with the first payment until the first of March, but I wired him I could not do that. But as for me telling him he could have the corner for forty thousand before I left is a barefaced lie; you can tell him I said so. The way the thing turned out I don't care if the deal goes thru or not, as I am being done out of two thousand. Now, if he is any man at all he should give you the one thousand out of that, as you helped him to get the two thousand of.

"The way the deal stands now, I will be money out at the present as I placed a mortgage on it for ten thousand the first of Dec. last year, and there will be some interest due on that until the time the deal goes thru. That mortgage is with the Marquette Trust Company so the ten thousand has to go to them, and the interest and the fee for making out the papers I will have to dig that up. So you will have to get your commission out of Lundberg, and if he wouldn't pay you, you won't need to let the deal go through, as he had no business to tell you a lie to make a few dollars. I also like to have it stated that he should stand the expense in chanshing from first to second mortgage with revenue stamps and filing and all. I will sign and fill out the papers providing it goes through on this conditions; otherwise you can tear them up and what expense you have been to, you can make up your bill and send to me as I don't want you to be out any.

"Sincerely yours,

"A. E. Carlston."

On receiving the contract and this letter Anderson refused to deliver the contract or complete the deal, unless Lundberg paid him a commission of $400, made the cash payment of $9,900, and agreed to bear all expense of making the change if the first mortgage should be released and a second mortgage taken in its place. Lundberg refused to pay the commission demanded by Anderson, but agreed to bear the expense of changing the mortgages, and seems to have made an attempt to raise the money for the cash payment, but apparently did not succeed in doing so. And it is undisputed that the contract was never delivered and the proposed purchase never consummated. The court incorporated the contract and the letter in its findings, and then found as a fact that the contract had never been delivered; that on receiving the contract Anderson had notified Lundberg of the conditions with which he must comply before it would be delivered; that Lundberg agreed to stand the expense of changing the mortgages but refused to pay the commission, and "thereafter notified Anderson that he did not have the money to make the deal, and the transaction ended."

Plaintiff concedes that there was never any manual delivery of the contract; but, in effect, insists that the only condition of benefit to Carlston was the requirement that Lundberg should assume the expense of changing the mortgages, and that Lundberg having agreed to assume that expense, the contract should be deemed to have gone into effect. But Carlston did not accept the proposition as made, and did not himself make a proposition to be presented to Lundberg. He wrote Anderson that he did not care whether the deal went through or not. He suggested what Anderson ought to require as conditions to the closing of the contract, and authorized him to refuse to enter into it and to tear up the papers if such conditions were not complied with. What he really did was to give Anderson the privilege of closing the deal on the prescribed conditions, with an intimation that he would be equally well pleased if it were not consummated.

The negotiations between Anderson and Lundberg continued until some time in February. On January 18, 1923, Lundberg made a contract with plaintiff to do the excavating for an apartment build-

ing which he proposed to erect on the property. This contract provided that plaintiff was not to commence work under it until notified in writing by Lundberg. He commenced work with a steam shovel on February 6 and continued until February 17. He had received no notice to begin work, but the court found that he proceeded with the knowledge of Lundberg and without objection from him, and held that Lundberg was personally liable for the value of the work actually performed. As Lundberg is not a party to this appeal, we are not concerned with that question.

On February 15, 1923, J. J. Ostlund, a friend of Carlston, telegraphed him that some one was at work on his property. Carlston telegraphed back on the same day, asking Ostlund to find out who was doing the work, and to find out what could be done from an attorney named Nichols. On February 17 Nichols posted a notice on the premises conceded to be sufficient in form to protect the owner against mechanics' liens. When plaintiff saw this notice he ceased work, and two weeks later filed a notice claiming a lien for the work actually done.

As Lundberg never acquired any interest in the property nor any right to enter upon it, plaintiff could not acquire a lien for work done at the instance of Lundberg without the knowledge of the owner. As this is decisive of the case, there is no occasion to consider the other questions presented.

Order affirmed.